## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### Case No. 11-CV-61904- SEITZ/SIMONTON

HARRY PERRET and
MELINDA PERRET, individually,
and on behalf of all those similarly situated,

        Plaintiffs,

vs.

WYNDHAM VACATION RESORTS, INC. and
FAIRSHARE VACATION OWNERS ASSOCIATION,

        Defendants.

_____/

### ORDER GRANTING MOTION TO DISMISS AND CLOSING CASE

THIS CAUSE is before the Court on the Defendants' Motion to Dismiss Second Amended Complaint [DE-82]. The Court heard argument of counsel at a hearing held on August 8, 2012. Plaintiffs' Second Amended Complaint arises out of the sale and management of timeshare vacation properties in Florida. Plaintiffs assert that the sale transactions were misleading and deceptive and that the management costs assessed by Defendants are excessive and unreasonable. Defendants seeks to dismiss all six counts of the Second Amended Complaint for failure to state a cause of action upon which relief can be granted. Because Plaintiffs cannot state a cause of action upon which relief can be granted and, based on Plaintiffs' arguments at the hearing, any amendment would be futile, Defendants' Motion to Dismiss is granted and Plaintiffs' Second Amended Complaint is dismissed with prejudice.

## I. Facts Alleged in the Second Amended Complaint

*Introduction*[1]

Defendant Wyndham Vacation Resorts, Inc. (Wyndham) advertises, sells, and manages timeshare properties in Florida. Defendant FairShare Vacation Owners Association (FairShare) is the trustee for the beneficiaries of the Wyndham Trust (Trust). The Trust beneficiaries purchased timeshare properties from Wyndham and voluntarily placed some of their property rights into the Trust. Plaintiffs generally allege that Defendants were deceptive and misleading in their sale and management of timeshare properties. Specifically, Plaintiffs' Second Amended Complaint alleges six causes of action: (1) equitable relief against both Defendants; (2) breach of fiduciary duty against FairShare; (3) breach of fiduciary duty against Wyndham; (4) violation of Florida's Deceptive and Unfair Trade Practices Act (FDUTPA) against Wyndham; (5) breach of contract against both Defendants; and (6) fraud by Wyndham.

Over the course of more than three years, Plaintiffs entered into eight transactions with Defendants. The first transaction was the purchase of a timeshare vacation property at what is known as the Bonnet Creek Resort, A Condominium (Bonnet Creek). Thereafter, each transaction, except the last, involved the purchase of additional interests in Bonnet Creek, thereby increasing Plaintiffs' ownership interest in Bonnet Creek.[2] With each transaction,

---

[1] Some of the information in this section is not directly pled in the Second Amended Complaint. However, it can be gleaned from reading the Second Amended Complaint in conjunction with the transaction documents attached to the Complaint and submitted by Defendants in support of their Motion to Dismiss.

[2] Plaintiffs final purchase actually exchanged their interest in Bonnet Creek for an interest in an out-of-state property. That transaction is not relevant because Plaintiffs' proposed class consists of purchasers of Wyndham timeshare properties in Florida.

Plaintiffs executed essentially the same documents – a Purchase and Sale Agreement and an Assignment Agreement. In the Assignment Agreement, Plaintiffs transferred their "use, occupancy and possessory rights in the Property" to the Trust. FairShare is the Trustee of the Trust and as Trustee it entered into a Management Agreement with Wyndham, by which Wyndham was to manage the Trust and the Plan set up by the Trust Agreement.[3]

The Plan allowed property owners who transferred their use, occupancy and possessory interests into the Trust to receive points based on the size of their property interest which could then be used to spend time at other properties for which the Trust held rights. Thus, by transferring their property interest in Bonnet Creek into the Trust, Plaintiffs received points. Plaintiffs could then use the points to stay at other properties, whose owners participated in the Trust and Plan, instead of at Bonnet Creek. The nature of the Plan is at the heart of several of the legal issues involved in this motion.

The Bonnet Creek property was managed by the property owners' association (POA). The Bonnet Creek POA entered into a management agreement with Wyndham Vacation Management, Inc. Neither the Bonnet Creek POA nor Wyndham Vacation Management, Inc. are parties to this action. As part of the Trust management, Wyndham, as Trust Manager, agreed to collect the POA fees, hold them in escrow, and remit them to the POA or Wyndham Vacation Management, Inc. As a result, Plaintiffs paid all fees, their POA fees, any POA assessments, as well as the Plan fees to Wyndham as manager of the Trust and the Plan. A chart Defendants used at the hearing, and not objected to by Plaintiffs, setting out the relationships between Plaintiffs

---

[3]The Plan is currently known as Club Wyndham Plus.

and all these entities is attached to this Order as Exhibit 1.[4]

*The Misrepresentations and Omissions*

The Second Amended Complaint alleges that the two Defendants made misleading representations and omissions prior to and during the sale of the timeshares, which misrepresented the actual nature, identity, and financial and legal consequences of the sale and the respective rights, obligations, and duties of the parties arising from the sale.  Defendants characterized the transaction as a simple purchase of a timeshare vacation but the purchase is bundled within a complex and confusing set of transactions which relate to financial, management, maintenance, trust, and other legal relationships and obligations undertaken by the purchaser and seller.  By misrepresenting the nature of the transactions, Defendants induced Plaintiffs to enter into financially onerous relationships.

The sale transaction actually involves multiple transactions: (1) the purchase and sale of a fractional fee simple interest in real estate; (2) the voluntary transfer of the fee simple interest to the Trust; (3) an assignment of points to the purchaser which can be traded for vacation time at certain Wyndham owned properties; (4) an agreement by the purchaser to engage Wyndham-controlled property managers and to pay them fees; (5) an agreement to pay monthly maintenance fees to Wyndham property managers; and (6) a relinquishment or waiver by the purchaser of the right to freely sell their timeshare interest without giving Wyndham the first right of refusal on any transaction.  Plaintiffs allege that these agreements explicitly impose upon Defendants

---

[4]While the Court recognizes that the chart cannot be considered, it is an accurate representation of the parties' relationships, which are established by the various agreements among the parties and which are before the Court.  More importantly, it is an extremely helpful aid in understanding the relationships.

various fiduciary duties and obligations. Plaintiffs also allege that Florida law imposes fiduciary duties on Defendants, specifically, Florida Statute §§ 721.56(4) and 721.13(2)(a).

In support of the fraud and FDUTPA claims, Plaintiffs allege that Wyndham, through its agents, made fraudulent representations to Plaintiffs and failed to disclose material facts, on and immediately prior to the dates of execution of the contracts attached to the Second Amended Complaint, including February 23, 2007, August 27, 2007, March 15, 2008, April 4, 2010, and October 15, 2010. Specifically, Wyndham's agents stated that: (1) the timeshares were profitable; (2) the value of the timeshares was higher than their actual value; (3) the purchase price for the timeshare was reasonable; (4) that the units were worth more than Wyndham was charging; (5), that Defendants' management and maintenance fees were reasonable and would remain reasonable; and (6) that the units were desirable and readily rented, which would allow Plaintiffs to recoup their costs. Plaintiffs also allege that Wyndham's agents failed to inform Plaintiffs that management and maintenance fees were unreasonable, excessive, and overstated; that the units were not in great demand or easily rented; and that the units were not worth what Wyndham claimed they were worth. Plaintiffs claim that these statements and omissions were made by the people who signed the contracts on behalf of Wyndham and by the following Wyndham agents: Hamid Kabili, Paul Green, Michael Abramowitz, Maria X. Pinochet, Javier Vegas, and Javier Sabio. As a result of these statements, which Wyndham and its agents knew were false, Plaintiffs were induced to enter into multiple purchase and sale agreements over the course of several years.

After the closing of the transactions, Defendants begin collecting the fees and costs associated with the timeshare ownership. Plaintiffs assert that these fees and costs are so

excessive, unreasonable, and unrelated to Defendants' actual costs and expenses as to unjustly enrich Defendants and impose an extreme detriment on Plaintiffs.

*The Agreements*[5]

Each time Plaintiffs purchased an interest in Bonnet Creek they executed a Purchase and Sale Agreement by which Plaintiffs purchased a "fee simple real property interest as a tenant-in-common with other Owners in the Property." Plaintiffs then voluntarily chose to transfer their "use, occupancy and possessory rights" in Bonnet Creek to the Trust by executing an Assignment Agreement. The Assignment Agreement incorporated by reference the Trust Agreement between Wyndham and FairShare.

The Trust Agreement[6] was set up "to permit the Beneficiaries to use and exchange the Use Rights available through the Trust." Persons who subjected their property to the Trust Agreement were to be allocated points that could be used to reserve Trust properties. Under the Trust Agreement, the Trustee, FairShare, agreed to develop or contract with a third party to provide a reservation system to enable members to reserve the use of Trust properties. Under the Trust Agreement the members also agreed to allow the Trustee to collect the POA fees, hold the fees in escrow, and remit the fees to the POAs when appropriate. Section 10.02 of the Trust Agreement, entitled "Program Fee," states:

> (a)     **Amount**: The amount of the Program Fee shall be determined by the Trustee as needed to cover the cost of operation and administration of the Plan (including the operation and administration of the Trust and the Association and, to the extent that the

---

[5]While Plaintiffs entered into multiple transactions with Defendants, the language in the documents used is either identical or very similar. Therefore, the Court will only set out the relevant language once.

[6]A copy of the Trust Agreement can be found beginning at DE-77-1 at 30.

Trust is responsible therefor, the operation, maintenance, repair and replacement of the Trust Properties). The Trustee may establish varying fees among Members provided there is a reasonable basis for such fee structure. The Program Fee shall be determined prior to January 1 of each year in connection with the burdget process for the Plan.

(b)     **Use**: The Program Fee will be used by the Trustee to fund the operation and administration of the Plan (including the operation and administration of the Trust and the Association and, to the extent that the Trust is responsible therefor, the operation, maintenance, repair and replacement of the Trust Properties).

Section 10.03 of the Trust Agreement, entitled "[P]OA Fees," states, in part, "The amount of the [P]OA Fee will be determined by each Member's respective [P]OA and not by the Trustee. The amount of the [P]OA Fee will [be] determined by the board of directors or other governing or managing authority of the [P]OA which governs such Member's Property Interest." Section 10.06 of the Trust Agreement, entitled "Special Assessments," sets out how shortfalls in the Program Fee and POA Fee will be assessed.

FairShare, as Trustee, also entered into a Management Agreement with Wyndham.[7] Under the terms of the Management Agreement, FairShare retained Wyndham as the manager of the Trust and the Plan. Under section 5.3 of the Management Agreement, the manager, subject to the supervision of the Trustee, is required to prepare and submit a budget to the Trustee based on the POA budgets, determine each member's Program Fee, and determine whether a special assessment is necessary. Section 6.1 of the Management Agreement, entitled "Fee," states: "Manager shall receive a monthly compensation equal to one-twelfth (1/12th) of five percent (5%) of the Program Fees, special and other assessments (other than the POA Fees) collected from Members in connection with the operation of the Trust." Section 6.2 of the Management

---

[7]A copy of the Management Agreement can be found beginning at DE-77-2 at 29. At the time of that Management Agreement, Wyndham was known as Fairfield Communities, Inc.

Agreement, entitled "Expenses," sets out the costs and expenses incurred by the Manager that the Trust must reimburse.

In addition to these agreements, Bonnet Creek, through its Board of Directors, entered into an agreement with Wyndham Vacation Management, Inc. to have Wyndham Vacation Management, Inc. manage Bonnet Creek. *See* DE-82-10. Wyndham Vacation Management, Inc. is a separate legal entity from Wyndham and has not been named as a Defendant in this case.

*Plaintiffs' Claims*[8]

Count I of the Amended Complaint alleges that Plaintiffs will suffer irreparable harm if Defendants are not enjoined from continuing to sell timeshares using their current methods and if Defendants are not enjoined from continuing to impose inflated management and maintenance fees. Count I also seeks a declaratory judgment finding that Defendants' sales methods are fraudulent, unconscionable, and inequitable.

Count II, against FairShare, alleges that Florida Statute §§ 721.56(4) and 721.13(2)(a) impose fiduciary obligations on FairShare which FairShare has breached by: (a) assessing management fees far in excess of Wyndham's operating budget and far in excess of timeshare industry standards which violated common considerations of unconscionableness, adhesion, and mutuality; (b) engaging in self-dealing by entering into a management agreement where Wyndham acted as both the seller and manager of the timeshare properties; (c) engaging in self-dealing by entering into a management agreement where Wyndham was the recipient of benefits which would not be afforded to an arms-length third party manager; (d) engaging in

---

[8]Despite previous instructions from the Court to avoid shotgun pleadings, several counts of the Second Amended Complaint incorporate nearly every allegation, both prior and future, into the count.

self-dealing by allowing Wyndham the sole discretion to expend and charge interest on funds that do not exist in the Trust; (e) improperly assessing excess maintenance and management fees thereby reducing its own regular monthly association contributions for its direct or indirect improper personal benefit; (f) failing to devote sufficient time and effort to the performance of its duties to insure that it reasonably and faithfully performed its duties on Plaintiffs' behalf; (g) engaging services at non-market or above-market rates in violation of its fiduciary duty; and (h) charging fixed annual rate increases in violation of Florida law. Count III, against Wyndham, alleges that it had a fiduciary duty, pursuant to Florida Statute §§ 721.56(4) and 721.13(2)(a), to Plaintiffs and that Wyndham breached that duty by: (a) assessing management fees in excess of Wyndham's operating budget which violated common considerations of unconscionableness, adhesion, and mutuality; (b) engaging in self-dealing by entering into a management agreement where Wyndham acted as both the seller and manager of the timeshare properties; (c) engaging in self-dealing by allowing Wyndham to expend and charge interest on funds that do not exist in the Trust; (d) improperly assessing excess maintenance and management fees thereby reducing its own regular monthly association contributions for its direct or indirect improper personal benefit; and (e) failing to devote sufficient time and effort to the performance of its duties to insure that they reasonably and faithfully performed its duties on Plaintiffs' behalf.

Count IV alleges that Wyndham advertises and sells timeshares by making affirmative misrepresentations and omissions of material information, as set out above, and such acts violate FDUTPA. Count V alleges that Defendants breached the agreements by failing to perform their management and trustee responsibilities and, as such, have violated the implied covenant of good faith and fair dealing. More specifically, Count V alleges that: (a) Defendants exploited and

9

abused their discretionary contractual power to impose management and maintenance fees – a power unconstrained by any contractual standards – by assessing unconscionably excessive management and maintenance fees far in excess of Wyndham's operating budget in violation of sections 10.02 10.03, and 10.06 of the Trust Agreement, and sections 5.3, 6.1, and 6.2 of the Management Agreement; and (b) Defendants provided assessment summaries to Plaintiffs that did not reflect the actual cost of services but overstated the actual market value of services (i.e. including "cost of living" increases) so that both Wyndham and FairShare could make an unconscionable profit.  Finally, Count VI alleges that Wyndham made knowingly false statements about the profitability and value of the timeshares, as set out above, that Wyndham knew that Plaintiffs would reasonably rely on the misrepresentations, and that Plaintiffs relied on these misrepresentations by entering into the agreements, which they would not otherwise have entered into.

## II.    Motion To Dismiss Standard

The purpose of a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the facial sufficiency of a complaint.  The rule permits dismissal of a complaint that fails to state a claim upon which relief can be granted.  It should be read alongside Federal Rule of Civil Procedure 8(a)(2), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Although a complaint challenged by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff is still obligated to provide the factual "grounds" for his entitlement to relief, and a conclusory or "formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

When a complaint is challenged under Rule 12(b)(6), a court will presume that all well-pleaded allegations are true and view the pleadings in the light most favorable to the plaintiff. *American United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1066 (11th Cir. 2007). However, once a court "identifies pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," it must determine whether the well-pled facts "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). A complaint can only survive a 12(b)(6) motion to dismiss if it contains factual allegations that are "enough to raise a right to relief above the speculative level, on the assumption that all the [factual] allegations in the complaint are true." *Twombly*, 550 U.S. at 555.

## III. Discussion

Defendants have moved to dismiss all counts of the Second Amended Complaint under Rule 12(b)(6) and the fraud counts for failure to comply with Federal Rule of Civil Procedure 9(b). Defendants also seek to dismiss the Second Amended Complaint because it is a shotgun pleading. The Court will address the claims in the same order as the parties have in their papers.

### A. Count VI for Fraud is Dismissed With Prejudice

Defendants move to dismiss Plaintiffs' fraud claim, Count VI, because Plaintiffs did not comply with the Court's prior Order Granting Motion to Dismiss [DE-68], in which the Court found that Plaintiffs had failed to plead fraud with the particularity required by Federal Rule of Civil Procedure 9(b) and stated:

> Plaintiffs may replead their fraud claim if they can set out (1) precisely what statements or omissions were made in which documents or oral representations; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) them; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendant obtained as a consequence of the fraud.

11

DE-68 at 8-9.  In their reply, Defendants also assert that many of the allegedly fraudulent statements are nothing more than opinions.  Thus, Defendants argue that Plaintiffs have failed to meet the pleading requirements of a fraud claim.  In response, Plaintiffs argue that under certain circumstances less particularity is required.  The Court, however, has previously considered this argument and found that "none of the reasons for the 'relaxed' standards apply here."  DE-68 at 8.  The Court will not reconsider this argument.

Plaintiffs were involved in multiple separate transactions with Defendants.  The Second Amended Complaint does not allege what statements were made in conjunction with which transactions; nor does it allege who made what statements, the precise statements made, or when and where each statement was made.  Thus, Plaintiffs have failed to adequately plead their fraud claim.  Furthermore, many of the alleged statements on which Plaintiffs rely – that the purchase price for the timeshare was reasonable, that the units were worth more than what Wyndham was charging for them, that Defendants' management and maintenance fees were reasonable, and that the units were desirable – are nothing more than opinions, or puffery, and do not constitute actionable fraud.  *Wasser v. Sasoni*, 652 So. 2d 411, 412 (Fla. 3d DCA 1995); *Silver v. Countrywide Home Loans, Inc.*, 760 F. Supp. 2d 1330, 1343 (S.D. Fla. 2011), *aff'd*, – Fed. App'x –, 2012 WL 2052949 (11th Cir. 2012) (statements that "the loan was a good deal for [plaintiff]" and "that the value of the Plaintiff's home would continue to rise and she would not have a problem refinancing" were merely opinions and did not amount to actionable fraud).

Finally, the Purchase and Sale Agreement explicitly states that Defendants did not make any representations to Plaintiffs concerning "rentals, rent potential or profit, tax advantages,

depreciation or investment potential or other monetary or financial advantages." Normally, a party is bound by a contract that the party signs unless the party can demonstrate that he was prevented from reading it or induced by the other party to refrain from reading it. *Silver*, 2012 WL 2052949, *1. Thus, the contract documents directly contradict Plaintiffs' allegations. Given that Plaintiffs have already had an opportunity to correct any pleading deficiencies, Plaintiffs' fraud claim is dismissed with prejudice.

*B.  Count IV for Violation of FDUTPA is Dismissed With Prejudice*

Defendants seek to dismiss Plaintiffs' FDUTPA claim for the same reasons as the fraud claim – failure to meet the pleading requirements of Rule 9(b), the alleged misrepresentations are nothing more than opinion, and the contracts directly contradict the alleged misrepresentation. In response, Plaintiffs rely on the same arguments made against dismissing their fraud claim. However, the Court has previously stated that the FDUTPA claim must meet the same pleading standard required for the fraud claim [DE-68 at 9]. As set out above, in Section III.A., Plaintiffs have failed to meet this standard. Further, as also set out above, most of the alleged misrepresentations Plaintiffs rely upon are nothing more than opinion or puffery. Consequently, Count IV is dismissed with prejudice.

*C.  Count II for FairShare's Breach of Fiduciary Duty is Dismissed With Prejudice*

Defendants move to dismiss the breach of fiduciary duty claim against FairShare because Plaintiffs have not pled a viable statutory basis for a fiduciary duty between FairShare and Plaintiffs. Plaintiffs have pled that FairShare owed them a fiduciary duty under the Trust

Agreement and pursuant to Florida Statutes §§ 721.56(4) and 721.13(2)(a).[9]  Defendants assert

that neither one of these statutes is applicable.

Section 721.13(2)(a) applies to managing entities of timeshare plans[10] and § 721.56(4)

applies to managing entities of multisite timeshare plans[11].  Under Florida Statute § 721.05(39), a

"timeshare plan" means:

> any arrangement, plan, scheme, or similar device, other than an exchange program,
> whether by membership, agreement, tenancy in common, sale, lease, deed, rental
> agreement, license, or right-to-use agreement or by any other means, whereby *a*
> *purchaser, for consideration, receives ownership rights* in or a right to use
> accommodations, and facilities, if any, for a period of time less than a full year during any
> given year, but not necessarily for consecutive years.

(emphasis added).  This provision simply does not apply to FairShare.  First, FairShare is not a

timeshare plan.  The only interest for which Plaintiffs paid consideration in return for an

ownership interest was their interest in Bonnet Creek.  Thus, under the statutory language

Plaintiffs' only transactions that qualify as purchases of a timeshare plan were Plaintiffs'

purchases of their interests in Bonnet Creek, not Plaintiffs' voluntary transfers of some of their

property rights into the Trust.  Furthermore, FairShare is not a managing entity of a timeshare

plan because it does not manage Bonnet Creek.  Bonnet Creek is managed by its POA, which has

contracted with Wyndham Vacation Management, Inc. to manage the property.  Thus, FairShare

---

[9]In the Order Granting Motion to Dismiss, the Court dismissed with prejudice all breach of fiduciary duty claims based on a breach of contract because they are barred by the economic loss rule. *See* DE-68 at 11.

[10]Section 721.13(2)(a) states, in pertinent part: "The managing entity shall act in the capacity of a fiduciary to the purchasers of the timeshare plan."

[11]Section 721.56(4) states, in pertinent part: "The managing entity of a multisite timeshare plan shall comply fully with the requirements of s. 721.13, subject to the provisions of s. 721.13(11) for personal property timeshare plans."

14

does not owe Plaintiffs any fiduciary duties under § 721.13.

Nor is FairShare a multisite timeshare plan or the managing entity of a multisite timeshare plan. A "multisite timeshare plan" is defined as:

> any method, arrangement, or procedure with respect to which a purchaser obtains, by any means, a recurring right to use and occupy accommodations or facilities of more than one component site, only through use of a reservation system, whether or not the purchaser is able to elect to cease participating in the plan. . . . Multisite timeshare plan does not mean an exchange program as defined in s. 721.05.

Fla. Stat. § 721.52(4). Plaintiffs did not purchase the rights to use and occupy accommodations at more than one site. Plaintiffs purchased a timeshare interest in Bonnet Creek, a single site. Only upon the voluntary transfer to the Trust of their use, occupancy and possessory rights in Bonnet Creek did Plaintiffs have the option to stay at other sites. Thus, Plaintiffs did not buy into a multisite timeshare plan.

Furthermore, FairShare is an exchange program, not a multisite timeshare plan. First, the Court takes judicial notice of the fact that FairShare, under the name Club Wyndham Plus, is registered with the State of Florida as an exchange program.[12] Thus, the State of Florida recognizes FairShare as an exchange program. Second, under the statutory definition, FairShare is an exchange program. The Florida Statutes define an "exchange program," in relevant part, as

> any method, arrangement, or procedure for the voluntary exchange of the right to use and occupy accommodations and facilities among purchasers. The term does not include the assignment of the right to use and occupy accommodations and facilities to purchasers pursuant to a particular multisite timeshare plan's reservation system.

Fla. Stat. § 721.05(16). By voluntarily placing their interests in Bonnet Creek into the Trust,

---

[12]See the Florida Department of Business and Professional Regulation's website at https://www.myfloridalicense.com/LicenseDetail.asp?SID=&id=4905BC540CD6881A40C1550 D0A665804, last visited on August 13, 2012.

Plaintiffs could exchange their interest in Bonnet Creek with other voluntary participants in the exchange program to use the other participants' rights in other timeshare plans. Thus, FairShare is an exchange program. As such it cannot be a multisite timeshare program or a managing entity of a miltisite timeshare program. Consequently, § 721.56(4) does not apply to FairShare.

Plaintiffs argue that FairShare is a multisite timeshare plan's reservation system, which is explicitly excluded from the definition of exchange program. However, FairShare does not meet the definition of "reservation system." Florida Statutes § 721.52(6) defines "reservation system" as:

> means the method, arrangement, or procedure by which a purchaser, in order to reserve the use and occupancy of any accommodation or facility of the multisite timeshare plan for one or more use periods, is required to compete with other purchasers in the same multisite timeshare plan regardless of whether such reservation system is operated and maintained by the multisite timeshare plan managing entity, an exchange company, or any other person. In the event that a purchaser is required to use an exchange program as the purchaser's principal means of obtaining the right to use and occupy a multisite timeshare plan's accommodations and facilities, such arrangement shall be deemed a reservation system. When an exchange company utilizes a mechanism for the exchange of use of timeshare periods among members of an exchange program, such utilization is not a reservation system of a multisite timeshare plan.

FairShare is not a multisite timeshare reservation system because the interests that the voluntary participants place in the Trust for use by other Trust beneficiaries are interests in a timeshare plan, like Bonnet Creek, not interests in a multisite timeshare plan. Further, the statute explicitly excludes an exchange program from the definition of multisite timeshare plan reservation system. Thus, FairShare is not a multisite timeshare reservation system. Because the statutes relied upon by Plaintiffs do not impose fiduciary duties on FairShare, Plaintiffs' claim for breach of fiduciary duty against FairShare is dismissed with prejudice.

16

### D.  Count III for Breach of Fiduciary Duty by Wyndham is Dismissed With Prejudice

Defendants move to dismiss the breach of fiduciary duty claim against Wyndham because Plaintiffs have not pled a viable statutory basis for a fiduciary duty between Wyndham and Plaintiffs.  Plaintiffs have pled that Wyndham owed them a fiduciary duty under the Management Agreement between Wyndham and FairShare and pursuant to Florida Statutes §§ 721.56(4) and 721.13(2)(a).[13]  Defendants assert that neither one of these statute is applicable to Wyndham. Because, as set out above in section III.C., FairShare is not a timeshare plan or a multisite timeshare plan, Wyndham, through its Management Agreement with FairShare, cannot be the managing entity of either a timeshare plan or an multisite timeshare plan.  Consequently, Wyndham has no fiduciary duties to Plaintiffs under Florida Statutes §§ 721.56(4) and 721.13(2)(a).  Accordingly, Count III is dismissed with prejudice.

### E.  Count V for Breach of Contract by Wyndham is Dismissed With Prejudice

Defendants move to dismiss Plaintiffs' breach of contract claim because the Second Amended Complaint fails to allege how specific contract provisions were breached and because several of the allegations of breach are contradicted by one of the contracts between the parties. The Second Amended Complaint alleges, without distinguishing between the two Defendants,[14] that they breached sections 10.02, 10.03, and 10.06 of the Trust Agreement and sections 5.3, 6.1,

---

[13]As already stated, the Court previously dismissed with prejudice all breach of fiduciary duty claims based on a breach of contract because they are barred by the economic loss rule.  *See* DE-68.

[14]In their Response to the Motion, Plaintiffs argue that Defendants "acted as an undifferentiated incestuous unit."  However, there are no allegations in the Second Amended Complaint to support this contention.  Thus, Plaintiffs have failed to clearly allege which Defendant did what.

and 6.2 of the Management Agreement "by assessing unconscionably excessive management and maintenance fees far in excess of Wyndham's operating budget." Plaintiffs also allege that Defendants provided assessment summaries that overstated the actual cost of services, enabling Defendants to make an unconscionable profit. However, there are no allegations as to how these assessment summaries have violated any contract provisions. Because Plaintiffs have not adequately pled a breach of either the Trust Agreement or the Management Agreement, the breach of contract claim must be dismissed.

Under Florida law the "duty of good faith must relate to the performance of an express term of the contract and is not an abstract and independent term of a contract which may be asserted as a source of breach when all other terms have been performed pursuant to the contract requirements." *Hospital Corp. of America v. Florida Medical Center, Inc.*, 710 So. 2d 573, 575 (Fla. 4th DCA 1998). Thus, Plaintiffs cannot allege a general breach of the covenant of good faith and fair dealing; they must allege the breach in conjunction with a specific provision of a contract. While Plaintiffs response to the Motion to Dismiss states that the "essence of plaintiffs' claim for breach of contract is that the defendants violated the express, but standardless, contractual fee-, cost- and compensation provisions of their contracts by exacting commercially unreasonable amounts from the timeshare owners," Plaintiffs have not alleged any facts in the Second Amended Complaint to support this theory.

Section 10.02 of the Trust Agreement sets the "Program Fee," which is to cover the cost of operating and administering the Plan, i.e., the voluntary exchange program, not the cost of operating and administering Bonnet Creek. The Second Amended Complaint does not allege how this provision was violated, other than to state that the fees did not reflect the actual costs of

services. However, other than this conclusory statement, Plaintiffs have not alleged any facts that demonstrate that this is the case. Thus, Plaintiffs have failed to allege a violation of section 10.02 of the Trust Agreement.

Section 10.03 of the Trust Agreement governs the POA fees. Under this section, the amount of the fees is determined by the POA, not Wyndham or FairShare. Thus, because neither Defendant has any part in the determination of these fees, they could not have breached this section of the Trust Agreement.[15]

Section 10.06 of the Trust Agreement sets out how special assessments will be made if the Program Fees and POA fees are insufficient to cover actual costs. The Second Amended Complaint does not contain any allegations about "Special Assessments." Thus, Plaintiffs have not pled a breach of this provision.

Section 5.3 of the Management Agreement sets out that Wyndham has the responsibility to prepare an annual budget and to determine the Program Fee based on the budget. According to this section, the budget is based on the POA budget, which is set by the POA, not Defendants. Again, Plaintiffs have failed to allege how this provision has been breached, other than the conclusory allegations that the management and maintenance fees are "unconscionably excessive." Furthermore, neither Defendant sets the maintenance fees for Bonnet Creek, which are set by the POA. Any management fees charged to the POA are charged by a non-party management company. Thus, Defendants only had control over the management fees for the

---

[15]The Trust Agreement does enable FairShare, as Trustee, to collect the POA fees. However, the POA fees are held in escrow by FairShare until due, at which time FairShare pays them to the POA. Thus, while Plaintiffs paid these fees to FairShare, FairShare did not set the fees and did not have control over how they were used.

management of the Plan. However, section 6.1 of the Management Agreement sets out the formula for calculating the management fee. Plaintiffs have not alleged that Defendants did not adhere to this formula. Thus, Plaintiffs have not alleged a violation of section 5.3 of the Management Agreement or a violation of section 6.1.

Finally, section 6.2 of the Management Agreement sets out what costs and expenses the Plan manager may recover from the Trust. Thus, section 6.2 does not address management fees or maintenance fees. Accordingly, Plaintiffs have not alleged a breach of this section. Because Plaintiffs have not adequately alleged a specific breach of any contract section and, as set out below, amendment would be futile, Count V is dismissed with prejudice.

### F.  Count I for Injunctive and Declaratory Relief is Dismissed With Prejudice

Finally, Defendants move to dismiss Count I of the Second Amended Complaint, which seeks equitable relief against both Defendants based on FDUTPA and the Federal Declaratory Judgment Act. However, as set out above, Plaintiffs have failed to allege a cause of action under FDUTPA. Thus, Plaintiffs are not entitled to any relief under FDUTPA.

The Federal Declaratory Judgment Act, 28 U.S.C. § 2201(a), permits a court to declare the rights of parties only in cases of "actual controversy." An actual controversy exists when "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *GTE Directories Publishing Corp. v. Trimen America, Inc.,* 67 F.3d 1563, 1567 (11th Cir. 1995) (citation omitted). Because the Declaratory Judgment Act does not enlarge the Court's jurisdiction, Plaintiffs must show, at a minimum: (1) that they personally have suffered some actual or threatened injury as a result of the alleged conduct of the

20

defendant; (2) that the injury fairly can be traced to the challenged action; and (3) that it is likely to be redressed by a favorable decision. *Id.* (citations omitted).  Plaintiffs have failed to meet the first element.  Plaintiffs have failed to allege any actual or threatened injury.  At most, Plaintiffs have alleged that they are unhappy with the fees and costs associated with their timeshare ownership and their participation in the exchange program.  Nothing in the Second Amended Complaint establishes that Plaintiffs have suffered any actual or threatened legal injury. Furthermore, Plaintiffs are not seeking a declaration of their "rights" under the contracts; they are seeking a declaration that Defendants' actions were fraudulent, unconscionable and inequitable. These are not rights.   Finally, a court should not entertain an action for declaratory relief when the issues are properly raised in other counts of the pleadings and are already before the court. *Fernando Grinberg Trust Success International Properties, Inc. v. Scottsdale Insurance Co.,* 2010 WL 2510662, *1 (S.D. Fla. June 21, 2010) (citation omitted).  Here, the declaration sought is essentially the same as the relief sought in Plaintiffs' fraud, FDUTPA, and breach of contract claims.  Accordingly, Count I of the Second Amended Complaint, for injunctive and declaratory relief is dismissed with prejudice.

### G. Leave to Amend is Denied

Plaintiffs request leave to amend, if the Court grants the Motion to Dismiss.  However, leave to amend may be denied for futility "when the complaint as amended would still be properly dismissed." *Coventry First, LLC v. McCarty,* 605 F.3d 865, 870 (11th Cir. 2010) (quoting *Cockrell v. Sparks,* 510 F.3d 1307, 1310 (11th Cir. 2007)).  First, as set out above, Defendants have no statutory fiduciary duties to Plaintiffs.  Thus, Counts II and III could not be amended.  Turning to the fraud and FDUTPA claims, Plaintiffs have had two chances to draft these claims to comply with Rule 9(b) and, despite explicit instructions from the Court as to what

these claims must allege, Plaintiffs have failed to meet the pleading requirements of Rule 9(b).

At the hearing, Plaintiffs attempted to explain to the Court the basis for their breach of contract claim. Plaintiffs pointed to the sole factual support for their breach of contract claim, namely a slide from a presentation to investors, not timeshare purchasers, that referred to management fees having "contractual cost of living adjustments." Plaintiffs argued that this fact supports an allegation of excessive management fees because none of the contracts permit cost of living adjustments. However, the slide on which Plaintiffs rely addresses "property management" and the issues in Plaintiffs complaint involve *Plan management* fees and costs. Thus, this slide would not appear to support Plaintiffs' allegations.[16] Accordingly, Plaintiffs have not provided the Court with any additional facts that would support their breach of contract claim. Thus, amendment would be futile.

Accordingly, it is hereby

ORDERED that:

1. Defendants' Motion to Dismiss Second Amended Complaint [DE-82] is GRANTED. Plaintiffs' Second Amended Complaint is DISMISSED with prejudice.

2. All pending motions not otherwise ruled upon are DENIED as moot.

3. This case is CLOSED.

DONE AND ORDERED in Miami-Dade County, this 28ᵗ day of August, 2012.

Patricia A. Seitz

PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

Copies: All counsel of record

---

[16]The Court notes that this case has been pending in this Court for nearly a year and discovery has been commenced. At this point, Plaintiffs should have more facts to support their allegations, if such facts existed.

Exhibit 1



**PERRETT v. WYNDHAM**

Entity Relationship Chart

The Timeshare Plan

BONNET CREEK RESORT VACATION CONDOMINIUM ASSOCIATION, INC.
(Not a defendant)
The Property Owner Association ("POA") which manages and operates Bonnet Creek Resort.

— Management Agreement —

WYNDHAM VACATION MANAGEMENT, INC.
(Not a defendant)
Contracted with POA to manage day-to-day Bonnet Creek Resort.

HARRY AND MELINDA PERRETT
(Plaintiffs)
Former Owners of Timeshare Interest at Bonnet Creek Resort.

WYNDHAM VACATION RESORTS, INC.
(Defendant)
Develops and sells timeshare units to Purchasers.

FairShare Assignment Agreement

Management Agreement

The Exchange Programs

RCI
(Not a defendant)
Operates external exchange program for Wyndham timeshare owners.

FAIRSHARE VACATION OWNERSHIP ASSOCIATION
(Defendant)
Operates internal exchange program pursuant to Trust Agreement ("Club Wyndham Plan") for Wyndham timeshare owners.
Does not own or govern Bonnet Creek Resort.

Exhibit 1